UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| TRUE LINE CONTRACTING AND REMODELING SERVICES, INC. as a Successor in interest to VISION HOSPITALITY CONTRUCTION, LLC., *Plaintiff/Counter-Defendant* | ) ) ) ) ) ) ) |
| v. | ) ) |
| SHERATON PEORIA HOTEL, LLC, n/k/a 500 HAMILTON PEORIA, LLC, an Illinois limited liability company, NOIDA CAPITAL, LLC, a Florida limited liability Company, ENVIROCAP, LLC, a Florida Limited liability company, ILLINOIS BUSINESS FINANCIAL SERVICES, an Illinois corporation, U.S. SMALL BUSINESS ADMINISTRATION, INC., PENNANT MANAGEMENT, INC. UNKNOWN OWNERS and NON-RECORD CLAIMANTS, *Defendants.* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| ONE SOURCE EQUIPMENT RENTALS, LLC, *Intervenor/Counter-Plaintiff* | ) ) ) |

Case No.: 15-1013

## O R D E R AND OPINION

This matter is now before the Court on Plaintiff True Line Contracting and Remodeling Services Inc.'s Motion to Dismiss the Counterclaim and Rule 12(f) Motion to Strike Affirmative Defenses of Pennant Management, Inc. [12]. Defendant Pennant Management filed a Response [17]. For the reasons set forth below, True Line's Motion to Dismiss and Strike [12] is DENIED.

### STATEMENT OF FACTS

On December 8, 2014, Plaintiff True Line Contracting and Remodeling Services, Inc., ("True Line") successor in interest to Vision Hospitality Construction, LLC ("Vision") filed a

Complaint to Foreclose Mechanic's Lien in the Tenth Judicial Circuit, Peoria County. The case was removed to federal court on January 7, 2015. After the removal, Defendant Pennant Management, Inc., ("Pennant") filed an Answer, Affirmative Defenses, and a four count Counterclaim against True Line alleging True Line, as a successor to Vision, received actual and constructive fraudulent transfers, participated in the fraudulent conduct, and was unjustly enriched due to Nikesh Patel ("Patel") and First Farmers Financial, Inc.'s ("FFF") fraudulent conduct. True Line filed the current motion arguing Pennant's Counterclaims and First, Third, Fourth, Fifth, and Sixth Affirmative Defenses should be dismissed and stricken respectively because Pennant failed to plead its fraud claims with particularity and specificity as required by Fed. R. Civ. P. 9(b).

## DISCUSSION

**1. Legal Standard**

Court have traditionally held that a claim should not be dismissed unless it appears from the pleadings that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief. See Conley v. Gibson, 355 U.S. 41 (1957); Gould v. Artisoft, Inc., 1 F.3d 544, 548 (7th Cir. 1993). Rather, a claim should be construed broadly and liberally in conformity with the mandate in Federal Rule of Civil Procedure 8(f). More recently, the Supreme Court has phrased this standard as requiring a showing sufficient "to raise a right to relief beyond a speculative level." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). Furthermore, the claim for relief must be "plausible on its face." Id.; Ashcroft v. Iqbal, 129 S.Ct. 1937, 1953 (2009).

Federal R. Civ. P. 9(b) sets forth the requirements for alleging general fraud claims and states in part "in all averments of fraud or mistake, the circumstances constituting fraud or

mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).  The circumstances of fraud or mistake include "'the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'"  Vicom, Inc. v. Harbridge Merchant Servs., Inc., 20 F.3d 771, 777 (7th Cir. 1994) (quoting Uni* Quality, Inc. v. Infotronx, Inc., 974 F.2d 918, 924 (7th Cir. 1992)).

2.  Analysis

True Line argues because Pennant failed to allege with specificity and particularity their fraud claims in accordance with Rule 9(b)(6), the Counterclaims should be dismissed and its affirmative defenses stricken. However, Pennant is not alleging a common law fraud claim, but rather alleging True Line violated the Illinois Uniform Fraudulent Transfer Act ("UFTA"). The Seventh Circuit Court of Appeals has distinguished the pleading requirements of an UFTA claim from that of a common law fraud claim.  See Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F. 3d 1074, 1079-80 (7th Cir. 1997)(Because the UFTA "creates a cause of action for constructive fraud that requires neither evidence of actual intent to defraud nor a specific misrepresentation by the defendant", we will evaluate whether plaintiff has "pled the circumstances surrounding the elements of this statutory cause of action with sufficient particularity to satisfy Rule 9(b)").

**Count I of Counterclaim – Unjust Enrichment**

In Count I of its Counterclaim, Pennant alleges True Line unjustly received and retained excess payments made for its benefit and to the detriment of Pennant.  To properly state a claim for unjust enrichment under Illinois law, Pennant must allege that True Line "has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates

the fundamental principles of justice, equity, and good conscience." Cleary v. Philip Morris Inc., 656 F.3d 511, 516 (7th Cir. Ill. 2011) *quoting* HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc., 545 N.E.2d 672, 679 (Ill. 1989).

Here, Pennant alleged True Line received payments that exceeded the value of the labor and materials it provided. Pennant included an itemized list of the payments made. In addition, Pennant alleged Patel and FFF made payments in the amount of $24 million to True Line using funds stolen from Pennant. The Court finds that Pennant has sufficiently stated a claim for unjust enrichment and True Line's Motion to Dismiss as to Count I is denied.

**Count II of Counterclaim – Actual Fraudulent Transfer Pursuant to UFTA § 5(a)(1)**

To a state claim for actual fraud under UFTA § 5(a)(1), Plaintiff must allege that the defendant had "the actual intent to hinder, delay, or defraud any creditor of the debtor" regardless of whether creditor's claim arose before or after the transfer as made. 740 ILCS § 160/5(a)(1). The UFTA sets forth "eleven badges of fraud" for the Court to weigh in determining whether debtor had the intent to defraud. See 740 ILCS § 160/5(b)(1); Rubbermaid, Inc. v. Robert Bosch Tool Corp., No. 09-1395, 2010 WL 3834410, *3 (C.D. Ill. Sept. 23, 2010). However, all eleven factors need not be present in order to prove actual fraud existed. See Brandon v. Anesthesia & Pain Mgmt. Assocs., 419 F.3d 594, 599-600 (7th Cir. Ill. 2005).

Here, Pennant alleges five of the eleven badges of fraud set forth in the UFTA. Specifically, for the first badge of fraud, Pennant alleges True Line was an insider when Patel and FFF made the transfers to it. See 740 ILCS § 160/5(b)(1). Pennant alleges that because Patel was a majority owner of Vision (now True Line), True Line was an insider because it was "a corporation of which the debtor is a director, officer, or person in control." 740 ILCS § 160/2(g)(1)(D).

For the second badge of fraud, Pennant alleges that Patel and FFF "removed or concealed assets by transferring excessive payments to True Line." 740 ILCS § 160/5(b)(7). Similar to the second badge, for the third badge of fraud Pennant alleges that the funds received by True Line were not reasonably equivalent to the work done. Specifically, Pennant alleges Patel admitted he used Pennant's money to pay True Line excessive payments.

For the fourth badge of fraud, Pennant alleges Patel and FFF were insolvent at the time they made the transfers to True Line. See 740 ILCS § 160/5(b)(9). In its Counterclaim, Pennant alleges while owing it $180 million, Patel and FFF purchased real estate, luxury items, and invested and overpaid True Line.

Lastly, for the fifth badge of fraud, Pennant alleges that the transfers to True Line occurred "shortly before or shortly after a substantial debt was incurred." 740 ILCS § 160/5(b)(9). In support its allegation, Pennant asserts that Patel and FFF began making transfers to True Line a few months after Patel sold the fraudulent loan to Pennant and the transfers continued for eleven months thereafter while Patel and FFF continued to defraud Pennant. After reviewing the allegations made by Pennant, the Court finds that Pennant has sufficiently stated a claim for Actual Fraudulent Transfer Pursuant to UFTA § 5(a)(1). Accordingly, True Line's Motion to Dismiss as to Count II is denied.

**Count III of Counterclaim - Constructive Fraudulent Transfer Pursuant to §5(A)(2)**

In Count III of its Counterclaim, Pennant alleges that the excess payments received by True Line constitute constructive fraudulent transfers under § 160(5)(a)(2) of the UFTA. Section 160(5)(a)(2) provides in part:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the

> obligation…without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

740 ILCS § 160/5(a)(2). "Pursuant to Rule 9(b), in order to state a valid claim for constructive fraudulent transfer, a plaintiff must allege what (or how much) was transferred, when the transfer was made, how it was made, who made it, who received it, and under what circumstances." Handler v. Heidenry, No. 11 C 4494, 2012 WL 2396615, at *5 (N.D. Ill. June 25, 2012).

Here, Pennant's Counterclaim specifically alleges the dates the transfers were made, the amount of the transfers, the identity of the transferor, and the identity of the transferee. Pennant also alleges Patel used monies stolen from Pennant to acquire the Sheraton property and used stolen monies to become a majority owner of Vision in 2013, which merged into True Line in August 2014. Lastly, Pennant alleges Patel admitted that he used Pennant's money to pay True Line inflated amounts for the services actually provided. The Court finds that Pennant has sufficiently stated a claim for Constructive Fraudulent Transfer Pursuant to UFTA §5(A)(2). Accordingly, True Line's Motion to Dismiss as to Count III is denied.

**Count IV – Fraudulent Conveyance Pursuant to the UFTA § 6(a)**

In Count IV of its Counterclaim, Pennant alleges that Patel and FFF fraudulently transferred funds to True Line. Section 6(a) states in part

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

6

740 ILCS 160/6. "To state a legally sufficient cause of action for fraudulent transfer in law under section 6 of the Fraudulent Transfer Act, the plaintiff must allege: (1) a transfer made for inadequate consideration; (2) an existing or contemplated indebtedness owed by the transferor; and (3) the transferor's failure to retain sufficient property to repay his indebtedness." Handler, WL 2396615, at *5.

Here, Pennant alleges Patel and FFF stole $180 million from Pennant from June 2013 through August 2015. In addition, Pennant provided a detailed account of all the payments Patel and FFF made to True Line from October 2013 through September 2014. Pennant alleges that all payments made to True Line were excessive, Patel and FFF were insolvent at that time, and Patel and FFF did not retain sufficient property to repay Pennant. The Court finds that Pennant has sufficiently stated a claim for Fraudulent Conveyance Pursuant to the UFTA § 6(a). Accordingly, True Line's Motion to Dismiss as to Count IV is denied.

**Pennant's Affirmative Defenses**

True Line argues Pennant's First, Third, Fourth, Fifth, and Sixth Affirmative Defenses fail for the same reasons that Pennant's Counterclaims fail. Since the Court has found that the counterclaims sufficiently state a claim, the Court finds that allegations set forth in the First, Third, Fourth, Fifth, and Sixth Affirmative Defenses are sufficient. Accordingly, True Line's Motion to Strike Pennant's First, Third, Fourth, Fifth, and Sixth Affirmative Defenses is Denied.

## CONCLUSION

For the reasons set forth below, True Line Contracting and Remodeling Services Inc.'s Motion to Dismiss the Counterclaim and Rule 12(f) Motion to Strike Affirmative Defenses of Pennant Management, Inc. [12] is DENIED. True Line is directed to file its Answer to

Pennant's Counterclaim within 21 days of the entry of this Order. This matter is referred to the Magistrate for a Rule 16 Conference and to manage discovery.

    Entered this 4th day of September, 2015.

                                                   /s/ James E. Shadid
                                                   James E. Shadid
                                                   Chief United States District Judge